**BOLANDER, INC., Relator,**

v.

**COMMISSIONER OF JOBS AND TRAINING, Respondent.**

No. C9–88–757.

Court of Appeals of Minnesota.

Oct. 4, 1988.

Steven J. Vodonik, St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by WOZNIAK, C.J., and PARKER and SCHUMACHER, JJ., without oral argument.

## OPINION

SCHUMACHER, Judge.

Relator Bolander, Inc. seeks review of a determination that it is a new employer "in the construction industry," and is therefore required to pay a higher unemployment tax rate.

We affirm.

## FACTS

On December 30, 1986, Bolander, Inc. was incorporated under the laws of the State of Minnesota. Bolander, Inc. is a wholly-owned subsidiary of Carl Bolander & Sons, a Minnesota construction corporation involved in pile driving, excavation, earth work and demolition. Bolander, Inc. and Carl Bolander & Sons work out of the same physical location.

The employees of Bolander, Inc. are predominantly mechanics, bookkeepers, and civil engineers. The mechanics work on heavy construction equipment of Carl Bolander & Sons, and the bookkeepers are responsible for the payroll of both Bolander, Inc. and Carl Bolander & Sons. The civil engineers submit bids, and estimate, control, and oversee projects performed by Carl Bolander & Sons. Bolander, Inc. also does some work for SKB, Inc., another subsidiary of Bolander in the landfill business, and for Alcan Construction, partially owned by Carl Bolander & Sons.

On June 17, 1987, Bolander, Inc. was notified by the Department of Jobs and Training that its unemployment compensation tax rate would be 7.5 percent for 1987, since Bolander, Inc. was considered a new employer "in the construction industry." In arriving at its determination, the Department relied upon the Standard Industrial Classification Manual issued in 1972 by the United States Office of Management and Budget.

Bolander protested its tax rate for 1987, claiming it should be treated as an engineering firm or a mechanics shop, and not an employer "in the construction industry."

The Tax Liability Unit of the Department of Jobs and Training affirmed the Department's initial determination, and Bolander, Inc. appealed to a Department referee, who conducted a hearing. At the hearing, Bolander, Inc.'s in-house counsel explained that the reason Bolander, Inc. was formed was to avoid its parent company's high unemployment compensation tax rate, since Bolander, Inc.'s non-construction workers were never laid off. It was Bolander, Inc.'s position that it should be classified as an employer in the service industry under the Standard Industrial Classification Manual, rather than an employer in the construction industry.

A research analyst specialist for the Department of Jobs and Training testified that Bolander, Inc. should be assigned the higher unemployment tax rate for new employers in the construction industry. She explained that as a whole, Bolander, Inc. was involved in construction management, even though its employees' individual occupations were not necessarily construction occupations.

Following the hearing, the referee affirmed the Department's determination that Bolander, Inc. should be considered an employer in the construction industry. The referee reasoned that Bolander, Inc. was a "central administrative office" or an "auxiliary unit" of Carl Bolander & Sons, and that Bolander, Inc. should therefore be considered a construction company and assigned a tax rate of 7.5 percent for 1987. In so doing, the referee relied upon the 1972 edition of the Standard Industrial Classification Manual.

Bolander, Inc. appealed to a Commissioner's representative, who affirmed the referee's decision, focusing upon the overall purpose of the corporation:

The overall purpose of that employing unit is to manage construction projects. Bolander, Inc., employs its own civil engineers who may do testing, mechanics who may repair construction vehicles, and a corporate attorney, but this is in furtherance of its overall management of a construction business.

The Commissioner's representative noted that in 1989 Bolander, Inc. will obtain its own tax rate based upon its own employment experience rating record.

### ISSUE

Did the Commissioner's representative err by determining that Bolander, Inc. is an employer in the construction industry for unemployment compensation purposes?

### ANALYSIS

Minn.Stat. § 268.06, subd. 3a (1986) provides for a certain maximum contribution rate for new employers in general, and a higher rate for new employers "in the construction industry."

In *American Remodeling v. Department of Jobs and Training*, 419 N.W.2d 842 (Minn.Ct.App.1988), this court noted that in 1987 the following paragraph was added to Minn.Stat. § 268.06, subd. 3a, to clarify which employers should be classified in the construction industry:

For purposes of this subdivision an employer is in the construction industry if assigned an industrial classification within Division C of the Standard Industrial Classification Manual issued by the United States Office of Management and Budget as determined by the tax branch of the department.

1987 Minn.Laws ch. 362, § 10, effective January 1, 1988. The referee in the present case properly relied on the 1972 edition of the Standard Industrial Classification Manual [1] in applying Section 268.06, subd. 3a.

As the respondent Department recognizes, the Standard Industrial Classification Manual was developed to classify "establishments" by type of industry, rather than by type of occupation, enterprise, or company (which may consist of several establish-

---

1. The 1987 edition of the manual to which Bolander, Inc. refers did not become effective until January 1988. The tax year at issue in this case was 1987.

ments). "Establishment" is defined as "an economic unit, generally at a single physical location where business is conducted or where services or industrial operations are performed." Standard Industrial Classification Manual at 10.

Bolander, Inc. argues it is a separate "establishment" in a different industry than its parent company. The referee determined that Bolander, Inc. is not a separate establishment, but is a central administrative office or an auxiliary unit. The Standard Industrial Classification Manual defines these terms as follows:

> A central administrative office is an establishment primarily engaged in general administrative, supervisory, accounting, purchasing, engineering and systems planning, advertising, legal, financial, or related management functions performed centrally for other establishments of the same company. Central administrative offices characteristically do not produce any products nor do they provide any services for the general public, other companies, or government.

> An auxiliary unit is an establishment primarily engaged in performing supporting services for other establishments of the same company rather than for the general public or for other business firms. Auxiliaries include such diverse activities as research, development, and testing laboratories of manufacturing firms developing new or improved products with the company's own funds or on Federal contract; central warehouses for the company's own merchandise; central garages for the company's own vehicles; trading stamp redemption stores; milk receiving stations; and sales promotion offices.

*Id.*, Appendix A at 583.

The Standard Industrial Classification Manual states that "[c]entral administrative office and auxiliary establishments are classified industrially on the basis of the primary activity of the operating establishment(s) they serve." *Id.*, Appendix A at 584.

The testimony indicated that the business of Bolander, Inc. is basically managing the construction business of Carl Bolander & Sons. Viewing Bolander, Inc.'s operations as a whole, instead of focusing upon the individual occupations of its employees, the Commissioner's representative properly concluded that Bolander, Inc. was a new employer in the construction industry.

## DECISION

AFFIRMED.